IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD B. MCCOMB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 07-1049 |
| v. ) | Judge Nora Barry Fischer |
| ) | |
| MORGAN STANLEY & CO., INC. ) | |
| and EMPIRE HEALTHCHOICE HMO, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

**I.     Nature of the Lawsuit**

On July 26, 2007 Plaintiff Richard B. McComb ("Plaintiff") filed a Complaint against Morgan Stanley & Co., Inc. ("Morgan Stanley") and Empire Healthchoice HMO, INC. ("Empire") (collectively "Defendants"). Specifically, as to Morgan Stanley, Plaintiff's Complaint alleged violations of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §, et seq. ("FMLA")(Count I), for FMLA retaliation (Count II), intentional infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV), negligent violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (Count V), invasion of privacy (Count VI), defamation (Count VII), and unfair competition (Count VIII). In addition, as to Empire, Plaintiff alleged claims for intentional and negligent infliction of emotional distress (Counts III and IV), violation of HIPAA (Count V), and invasion of privacy (Count IV).

Defendant Morgan Stanley filed a partial motion seeking dismissal of Counts III, IV, V, VI and VII of Plaintiff's complaint for failure to state a claim upon which relief can be granted. Defendant Empire filed a motion to dismiss Plaintiff's complaint regarding all claims Plaintiff

asserts against Empire, specifically Counts III, IV, V, and VI. Plaintiff conceded that Counts IV and V should be dismissed as to both Empire and Morgan Stanley. Accordingly, in an order dated November 1, 2007, the Court dismissed Counts IV and V without prejudice. (Docket No. 27). The Court will now address Morgan Stanley's motion to dismiss Counts III, VI, and VII, and Empire's motion to dismiss Counts III and VI.

**II.     Plaintiff's Allegations**

Plaintiff alleges that, until he was terminated on August 11, 2005, Defendant Morgan Stanley employed him as a financial advisor. (Docket No. 1, at ¶¶ 8, 10). In March 2005, Plaintiff sought treatment to alleviate his sleep apnea that was caused by a genetic anomaly in his neck and throat. *Id.* at ¶¶ 12-13. From around March 2005 through July 2005, Plaintiff inquired and submitted paperwork to Empire, the administrator of Morgan Stanley's health plan, on at least three occasions to ascertain whether a particular surgical procedure to help cure his sleep apnea would be covered. *Id.* at ¶¶ 16-18.

In July 2005, Plaintiff alleges that he spoke with an Empire customer representative and questioned the representative about Empire's failure to process his request ("July Telephone Call"). *Id.* at ¶ 19. Following the July Telephone Call, the Empire representative contacted the Human Resources Department of Morgan Stanley and complained about Plaintiff's demeanor during the call ("Empire's Complaint"). *Id.* at ¶20. Empire's Complaint was then referred to Michael Torre, the head of the Human Resources Department of Morgan Stanley. *Id.* at ¶ 21. The Empire representative also sent an email to Mr. Torre regarding Plaintiff's conduct during the July Telephone Call, and Mr. Torre sent an email to Matthew Maloney, Plaintiff's supervisor, regarding the same. *Id.* at ¶¶ 22-23. Plaintiff alleges that the emails from Mr. Torre to Mr. Maloney disclosed

private medical information about Plaintiff's surgical procedure. *Id.* at ¶ 25.

On or around July 25, 2005, Plaintiff and Mr. Maloney had a conversation during which Mr. Maloney indicated that Plaintiff might have a problem relative to his employment with Morgan Stanley and referenced the email concerning Plaintiff's July Telephone Call. *Id.* at ¶28. Plaintiff further alleges that between July 29, 2005 and August 9, 2005, he expressed concerns to Mr. Maloney and Mr. Torre that Morgan Stanley and Empire had violated Morgan Stanley's Medical Privacy Policies and Procedures and the HIPAA privacy rules. *Id.* at ¶29.

Between August 11, 2005, the date of Plaintiff's termination, and December 5, 2005, Plaintiff alleges that he made several verbal and written requests to Morgan Stanley asking for the return of personal property, such as his personal computer. *Id.* at ¶ 31. On or around December 6, 2005, after a four month delay, Morgan Stanley returned Plaintiff's personal property, however, software had been uninstalled from his computer and client files had been deleted. *Id.* at ¶ 35.

After Plaintiff's employment was terminated, Plaintiff learned that Morgan Stanley personnel were making inaccurate and disparaging comments regarding his termination to his former clients which Plaintiff alleges constituted defamatory remarks. *Id.* ¶¶ 39-41. For example, Plaintiff alleges that Mr. Morningstar, a financial advisor with Morgan Stanley, called one of Plaintiff's clients and stated that he had to let Plaintiff go. *Id.* at ¶ 44. Further, while Plaintiff was still employed by Morgan Stanley, Mr. Maloney called one of Plaintiff's new clients and indicated that there were other Morgan Stanley brokers who could more appropriately handle the client's account. *Id.* at ¶ 45. On December 13, 2005, Plaintiff's counsel sent a letter to Mr. Maloney advising Morgan Stanley to cease and desist from making such defamatory remarks. *Id.* at ¶ 40.

Plaintiff alleges that the defamatory comments made by Morgan Stanley were untrue and

damaging to Plaintiff's business and reputation, negatively impacting Plaintiff's ability to attract clients or to obtain employment at a comparable brokerage house. *Id.* at ¶¶ 48, 51. Plaintiff alleges that Morgan Stanley was aware of the falsity of the defamatory statements, and published the statements with malice and the intent to harm Plaintiff. *Id.* at ¶¶ 49-50.

Plaintiff seeks compensation from Morgan Stanley for any and all benefits he would have received, including loss of wages, salary, employment benefits, and other compensation. *Id.* at p. 16. In addition to actual damages, Plaintiff seeks emotional distress damages for the pain, suffering, and humiliation caused by Defendants' actions as well as punitive damages and liquidated damages. *Id.* Moreover, Plaintiff seeks the costs and expenses associated with this action and reasonable attorney fees, any other equitable or legal relief the Court deems proper, and access to his entire personnel file. *Id.*

## III. Standard for Rule 12(b)(6)

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A 12(b)(6) motion requires the court to examine the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45 (1957) (*abrogated in other respects by Bell Atlantic Corporation v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).[1] "In determining the sufficiency of the complaint the court must accept

---

[1] Recently, the Supreme Court refined the standard applied to a motion to dismiss, abrogating the "no set of facts" language from *Conley* and holding that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. Of particular relevance here, the Court in *Twombly* then discussed this refined standard as to Rule 9:

> In reaching *this* conclusion, we do not apply any "heightened" pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished by the process of amending the Federal Rules, and not by judicial interpretation. *On certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires*.

all of plaintiffs' well-pled material allegations as true and draw all reasonable inferences therefrom in favor of plaintiffs." *McCliment v. Easton Area School Dist.*, Civil Action No. 07-0472, 2007 WL 2319768, at *1 (E.D. Pa. Aug. 10, 2007) (citing *Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997)); *see also Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). "The issue is not whether a [Plaintiff] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)). Under this standard, a complaint will be deemed to have alleged sufficient facts if it adequately puts the plaintiff on notice of the essential elements of defendant's claims. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir. 1997). Overall, "courts have an obligation . . . to view the complaint as a whole and to base rulings not upon the presence of mere words, but rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998)).

While a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits, a court may consider some evidence beyond a complaint

---

*Twombly*, 127 S.Ct. at 1973 (internal citations and quotations omitted) (first and second emphases added).

on a motion to dismiss "including public records . . . , documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case." *Core Const. & Remediation, Inc. v. Village of Spring Valley, NY*, No. Civ.A. 06-CV-1346, 2007 WL 2844870, at *2 (E.D. Pa. Sept. 27, 2007) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1380 n.1 and n.2 (3d Cir. 1995)) (internal citation omitted).

Finally, the defendant bears the burden to demonstrate that the complaint fails to state a claim. *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000).

## IV.     Plaintiff's Challenged Claims

### A. Invasion of Privacy (Count VI) and Defamation (Count VII)[2]

Plaintiff filed his complaint on July 26, 2007, seeking relief for both invasion of privacy against Defendants and defamation against Defendant Morgan Stanley, only. Defendants move to dismiss Plaintiff's claims for invasion of privacy because they are barred by the applicable statute of limitations. Under Pennsylvania law, the statute of limitations for both invasion of privacy and defamation claims is one year. 42 Pa. C.S.A §5523(1). Furthermore, Defendants argue that even if Plaintiff's claims are not barred by the statute of limitations, Plaintiff still fails to state a claim because the facts alleged cannot support an action for invasion of privacy and an action for defamation as a matter of law.

Plaintiff alleges, however, that his invasion of privacy and defamation claims should not be dismissed as Defendants' alleged fraudulent concealment tolled the statute of limitations relating to these claims. (Docket No. 27 at pp. 3-4; Docket No. 40 at p. 3). Further, Plaintiff argues that his

---

[2]This Court analyzed the invasion of privacy and defamation claims jointly. Obviously, only the analysis of the invasion of privacy claim applies to Empire as the Plaintiff did not assert a defamation claim against Empire in his complaint.

invasion of privacy and defamation claims should not be dismissed as Plaintiff has sufficiently pled each claim as a matter of law. (Docket No. 27, at p. 6; Docket No. 40, at p. 6).[3]

### 1. Application of the Theory of Fraudulent Concealment to Plaintiff's Claims

It is generally accepted that the three elements which must be alleged to establish fraudulent concealment are (1) wrongful concealment of actions by defendant; (2) failure of the plaintiff to discover the operative facts or the basis of his cause of action within the limitations periods; and (3) plaintiff's due diligence until discovery of the facts. *Bethlehem Steel Corp. v. Fischbach and Moore, Inc.*, 641 F.Supp. 271, 273 (E.D. Pa. 1986) (citation omitted). On a motion to dismiss, the relevant inquiries are two-fold:

> First, the Court must determine whether, accepting the allegations in the Complaint as true, the plaintiffs have stated a claim for fraudulent concealment, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and second, the Court must determine whether the plaintiffs have alleged underlying acts of fraudulent concealment with particularity as required by the heightened pleading standard for fraud claims provided by Rule 9(b), Fed.R.Civ.P., *see Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984).

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 500 F.Supp.2d 437, 448 (D. N.J. 2007) (as to a federal conspiracy claim).

Courts employ the "same 'knew or should have known' standard to determine whether the statute of limitations is tolled because of the discovery rule or because of fraudulent concealment." *Beauty Time*, 118 F.3d at 144 (citing *Urland*, 822 F.2d at 1273). Moreover, a "plaintiff's allegations must be sufficiently specific to satisfy the requirements of Fed.R.Civ.P. 9(b)." *Id.*; *see also Davis*

---

[3]This Court declines to address whether Plaintiff has satisfied the elements pertaining to these claims because Plaintiff's claims are time barred by the applicable statute of limitations.

*v. Grusemeyer*, 996 F.2d 617, 624 (3d Cir. 1993), *abrogated on other grounds by Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998).

The Court finds that while Plaintiff raised the doctrine of fraudulent concealment and the facts that potentially support its application in his response to Defendant Morgan Stanley's partial motion to dismiss (Docket No. 27, at pp. 3-6) and his response to Defendant Empire's motion to dismiss (Docket No. 40, at pp. 3-6), Plaintiff failed to plead any facts pertaining to the doctrine of fraudulent concealment in his Complaint. Although Plaintiff provides specific arguments in his response briefs, he fails to direct the Court to specific paragraphs in his complaint that warrant the application of fraudulent concealment, and therefore the Court cannot make a determination as to whether Plaintiff can state a claim pursuant to this doctrine. Plaintiff should have pled facts showing when and how the fraud was discovered, the reason why it was not discovered earlier, and the diligence plaintiff undertook in making his discovery. *Kiev v. Dion*, Civ. A. No. 87-6404, 1987 WL 13445, at *4 (E.D. Pa. June 30, 1987).

Furthermore, Plaintiff argues that he did not possess and still does not possess the salient facts concerning the circumstances of his injury and that given the opportunity he will be able to prove fraudulent concealment on behalf of both Defendants. (Docket No. 27 at p. 5; Docket No. 40 at pp. 5-6). However, as the Third Circuit held in *Ranke v. Sanofi-Synthelabo Inc.*, "[t]o the extent that any misleading communication did occur, or was believed to have occurred, it should have been pled in the complaint, but it was not. Indeed, were we to reverse the dismissal here to allow for discovery, we would be allowing appellants to conduct a fishing expedition in order to find a cause of action. We cannot do so." *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 196, 204 (3d Cir. 2006). Here, Plaintiff failed to plead any facts pertaining to misrepresentation and fraudulent concealment

as to his invasion of privacy claims and defamation claim in his initial Complaint although he argues the same in his responsive briefs. Accordingly, the question then becomes, does the Court permit amendment or not?

### 2. Applicability of One Year Statute of Limitations

Even if the Court permits Plaintiff to amend his complaint and specifically plead fraudulent concealment, equitable tolling, or the discovery rule, Plaintiff's claims are barred by the applicable one year statute of limitations. "The fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff *knew or should have known* despite the defendant's misrepresentation or omission." *Johnson v. Independence Blue Cross*, No. 06-1811, 2007 WL 2591189, at *1 (3d Cir. Sept. 7, 2007) (emphasis added).

As to Plaintiff's invasion of privacy claim, Defendants argue that based on the Plaintiff's allegations in his complaint, Plaintiff was aware of the alleged invasion of privacy and defamation actions more than a year before he filed his complaint, and therefore he should have filed a timely action. (Docket No. 18, at p. 4). Accordingly, Defendants argue that since Plaintiff failed to file a timely action, these claims must be dismissed because they are barred by the statute of limitations. Plaintiff's complaint alleges that he knew or should have known of the dissemination of the medical information that forms the basis of his invasion of privacy claim as of sometime between July 27, 2005 and August 9, 2005. (Docket No. 1, at ¶¶ 23, 27-30). Despite this admission, Plaintiff waited until July 26, 2007, nearly two years later, to file this law suit, when the statute of limitations is only one year. 42 Pa. C.S.A §5523(1).

As to Plaintiff's defamation claim, in his complaint, he alleges that the defamatory remarks were made prior to December 13, 2005, the date when his counsel sent a cease and desist letter.

(Docket No. 1, at ¶ 40). Plaintiff further pleads that the alleged defamatory comment made by his supervisor occurred prior to his termination, which occurred prior to August 2005. *Id.* at ¶¶ 45, 96. Accordingly, Plaintiff was well aware of any alleged defamatory statements more than one year prior to the filing of his Complaint; therefore his defamation claim is barred by the applicable one year statute of limitations. Moreover, he was represented by counsel as of December 13, 2005.

Plaintiff then argues that he was "lured into 'relax[ing] his vigilance'" with respect to commencing the instant matter" while attempting to rectify the issues in the instant action with Morgan Stanley and solidify his claims. (Document 27 at p. 5) (citing *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005)). Despite this argument, Plaintiff does not plead that he entered into a standstill agreement with Defendants in an effort to stay the tolling of the statute of limitations with respect to his claims.

On the other hand, Defendants' arguments are persuasive to this Court as Plaintiff cites to specific dates regarding his invasion of privacy and defamation claims in the complaint. For example, in Plaintiff's complaint, Plaintiff pleads that on December 13, 2005, his counsel sent a letter to Mr. Maloney advising Morgan Stanley to cease and desist from such defamatory remarks. (Docket No. 1 at ¶ 40). This allegation informs the Court that Plaintiff was aware on December 13, 2005 of some, if not all, of the alleged defamatory remarks, and therefore, should have filed a timely action. Moreover, Plaintiff alleges in his complaint that between approximately July 29, 2005 and August 9, 2005, Plaintiff expressed concerns to Mr. Maloney and Mr. Torre that Morgan Stanley and Empire had violated Morgan Stanley's Medical Privacy Policies and Procedures and the HIPAA privacy rules. (Docket No. 1, at ¶ 29). This allegation, as well as other allegations in the complaint, suggest to the Court that Plaintiff was aware of his invasion of privacy claim no later than August

9, 2005.  Therefore, since Plaintiff was aware and had knowledge of both his invasion of privacy claim and defamation claim nearly two years prior to the filing of his complaint on July 26, 2007, these actions are time barred by the applicable statute of limitations.

Accordingly, the Court finds it futile to permit amendment, *Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962), and GRANTS Defendants' motions to dismiss Counts VI and VII, with prejudice.

### B. Intentional Infliction of Emotional Distress (Count III)

Both Morgan Stanley and Empire seek dismissal of Plaintiff's claim for intentional infliction of emotional distress ("IIED").  There are four elements that a plaintiff must establish in order set forth a cause of action for IIED: (1) the conduct of defendant must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) defendant's conduct must cause emotional distress; (4) the distress must be severe.  Restatement (Second) of Torts § 46 (1965).  Defendant Empire argues that Plaintiff has failed to allege extreme and outrageous conduct, severe emotional distress, or physical injury, and therefore, has failed to state a claim upon which relief can be granted.

Morgan Stanley also argues that Plaintiff's IIED claim should be dismissed because (1) the Pennsylvania Worker's Compensation Act ("PWCA") bars Plaintiff's claim and (2) Plaintiff fails to state a claim as a matter of law in that the conduct alleged is not sufficiently outrageous to establish the same and Plaintiff has not alleged any specific bodily harm.

Plaintiff argues that an exception to the PWCA applies to his IIED claim and therefore his claim is not barred. Furthermore, Plaintiff argues that he has sufficiently pled his IIED claim, including damages.

#### 1. IIED Claim Against Defendant Morgan Stanley

11

Plaintiff alleges that the following conduct by Defendant Morgan Stanley amounted to outrageous actions: distributing Plaintiff's personal medical information to others within Morgan Stanley; distributing personal medical information at the time Morgan Stanley was in the process of firing employees; engaging in numerous tactics such as defaming Plaintiff to his own clients; withholding Plaintiff's personal property; and attempting to usurp Plaintiff's clients for no valid reason whatsoever. (Docket No. 27, at p. 13).

The Court does not need to determine whether Plaintiff has satisfied the pleading requirements for an IIED claim against Morgan Stanley since Plaintiff's claim against Morgan Stanley is barred by the PWCA. In Pennsylvania, the PWCA is the exclusive source of an employer's liability for injuries arising out of an employee's employment. 77 Pa. Const. Stat. § 481(a). Thus, the general rule is that the PWCA precludes employees from asserting claims of intentional infliction of emotional distress against their employers. *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997). However, there is an exception to the general rule for an injury caused by an intentional act of a third person intended to injure the employee based on personal reasons. 77 Pa. Const. Stat. § 411(1). "The act cannot be one which would be expected in the work place, and the tortfeasor must have been motivated by personal animus." *Mahoney v. Lancaster County Motors*, No. 05-CV-2395, 2006 WL 1284951, at * 3 (E.D. Pa. May 8, 2006) citing *Hettler v. Zany Brainy, Inc.*, No. 99-CV-3879, 2000 U.S. Dist. Lexis 14537, at *13 (E.D. Pa. Sept. 26, 2000). The critical inquiry in determining the applicability of this exception is whether the attack was motivated by personal reasons, as opposed to a generalized contempt or hatred, and was sufficiently unrelated to the work situation so as to not to arise out of the employment relationship. *Fugarino v. University Services*, 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000). Pennsylvania law

presumes that an injury is work related when it occurs on the employer's premises. *Mahoney*, 2006 WL 1284951 at* 3.

In *Kanuika*, the court considered a motion to dismiss on an IIED claim pertaining to a plaintiff who alleged she had been terminated based on her disability and because she was absent from work while on sick leave. *Kaniuka v. Good Shepherd Home*, No. Civ.A. 05-CV-02917, 2005 WL 2994348, at *5 (E.D. Pa. Nov. 3, 2005). The court held that the plaintiff failed to allege facts sufficient to maintain a workplace IIED claim in that her amended complaint did not state any facts indicating or inferring that the individual defendants' actions were unrelated to their employment relationship with plaintiff. *Id*.

In this case, like the *Kanuika* case, Plaintiff has failed to allege any facts in his complaint that indicate that Morgan Stanley's actions, or the actions of its employees, were unrelated to its employment relationship with Plaintiff. Furthermore, all the actions Plaintiff alleges that give rise to his IIED claim, such as the emails and termination, appear from the record to have taken place on Morgan Stanley's premises, and therefore, under Pennsylvania law would be presumed to be work related. Moreover, the PWCA preempts Plaintiff's IIED claim even in the context of a claim based on personal animus. *Mahoney*, 2006 WL 1284951 at *5.

In addition, as set forth below, Plaintiff failed to plead severe emotional distress as required to state a claim for IIED. Accordingly, the Court GRANTS Defendant Morgan Stanley's Motion to Dismiss Count III with prejudice.

### 2. IIED Claim Against Defendant Empire

Plaintiff's present IIED claim against Empire also fails for the reasons set forth below.

### a. Severe Emotional Distress Element of an IIED Claim

In order to state an IIED claim under Pennsylvania law, a plaintiff must establish physical injury or harm. *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. Ct. 1993). Furthermore, in *Kazatsky v. King David Memorial Park, Inc.*, the Pennsylvania Supreme Court, held that "at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." 527 A.2d 988, 955. A court within this circuit, at the motion to dismiss stage, held that a plaintiff failed to plead sufficient facts to support a claim for IIED in that the complaint alleged no facts which would satisfy the "competent medical evidence" element of the tort. *McClean v. American International Co. and American International Group*, Civ. A. No. 92-4691 (E.D. Pa. Oct. 14, 1992). In *McClean,* the plaintiff did not state whether he was ever medically treated for the alleged severe emotional distress he experienced and failed to describe any medical evidence supporting his claim of emotional injuries. *Id.* Further, the plaintiff's mere conclusory statements, for example, "plaintiff has been caused to suffer unnecessary emotional stress, strain, and mental anguish" were not sufficient to demonstrate emotional distress. *Id.*

In this case, Plaintiff failed to plead sufficient facts to establish physical harm and severe emotional distress to allege a claim for IIED. Plaintiff merely alleges that Empire's actions caused him to suffer severe emotional distress, and fails to state any supporting medical evidence or physical harm that is associated with his emotional distress.

### b. Outrageousness Element of IIED Claim

Plaintiff's IIED claim against Empire also fails because Plaintiff has not pled conduct that is sufficiently outrageous to state a claim for IIED. As a preliminary matter, it is for the court to determine if the defendant's conduct is so extreme as to permit recovery. *Cox v. Keystone Carbon*

*Co.*, 861 F.2d 390 (3d Cir. 1988). In order to meet this high standard, "the conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized society." *Id*. The Third Circuit has held that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for IIED. *Id.* Further, even on a motion to dismiss, "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide for a basis for recovery for IIED." *Capresecco v. Jenkintown Borough*, 261 F.Supp.2d 319, 323 (3d Cir. 2003). Indeed, it is the law of this Circuit that a plaintiff's claim for IIED based upon his loss of employment is insufficient to state a claim for relief capable of surviving a motion to dismiss. *Id.* An example of conduct that has been deemed outrageous in the employment context under Pennsylvania law includes cases where an employer engaged in both sexual harassment and other retaliatory behavior against an employee. *Id.* In addition, defendant's actions were determined to be outrageous when a plaintiff averred that she was threatened with physical violence and homicide, as compared to a court's determining that coercion of a plaintiff's termination, while knowing that the actions would cause plaintiff to be unemployable, and destroy his career, family and health, was not outrageous. *Brooks v. Systems Mfg. Corp.*, No. Civ. A. 03-1523, 2003 WL 23023826, at *3 (E.D. Pa. Dec. 18, 2003).

Plaintiff's allegations do not meet the stringent standards for pleading outrageous conduct. Plaintiff alleges that Empire distributed Plaintiff's personal medical information to employees of Morgan Stanley and that Plaintiff suffered severe emotional distress as the result of such disclosure. (Docket No. 1 at ¶¶ 25, 67, 70, 72; Docket No. 40, at p. 9). The conduct that Plaintiff alleges, even if taken as true, does not rise to the level of outrageousness required to state a claim for IIED under

15

Pennsylvania law because such actions do not constitute conduct that is so extreme as to go beyond all possible bounds of decency. Moreover, Plaintiff does not allege behavior that is comparable to the intolerable actions that Pennsylvania courts have determined to be outrageous, such as sexual harassment and retaliatory behavior or threats of physical violence. Finally, Plaintiff does cite any cases to support his allegations that the actions allegedly taken by Empire were sufficiently outrageous to survive Empire's Motion to Dismiss.

Accordingly, as set forth above, Defendant Empire's Motion to Dismiss Count III is GRANTED without prejudice.

## V. Conclusion

For the reasons set forth above, Defendant Morgan Stanley's Partial Motion to Dismiss [DE 16] is GRANTED WITH PREJUDICE as to Counts III, VI and VII. Defendant Empire's Motion to Dismiss is GRANTED WITH PREJUDICE as to Count VI and GRANTED WITHOUT PREJUDICE as to Count III. As appropriate order follows.

s/ Nora Barry Fischer
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record